UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SADLE D. HOWARD, JR.,

    Petitioner,

v.                                      Case No: 2:18-cv-747-JES-MRM

SECRETARY, DOC,

    Respondent.

## OPINION AND ORDER

Before the Court is Petitioner Sadle D. Howard, Jr.'s Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1). Howard challenges his conviction and resulting sentence for burglary of an occupied conveyance and grand theft.

**I.**   **Background**

On August 1, 2021, the State of Florida charged Howard of stealing property worth at least $300 from Kristina Gulliford's vehicle while her two children were inside. (Doc. #19-2 at 10). Attorney Steven Smith represented Howard.

At trial, Gulliford testified that she parked her vehicle outside a veterinary clinic to drop off a specimen. (Id. at 134). Her two children were in the back seat. (Id.). Within two minutes, Gulliford's son ran in and told her someone stole her

purse from the front passenger seat. (Id. at 135). Sean Cooper witnessed the theft while stopped at a nearby traffic light. He saw a new model black Camaro convertible—a vehicle he had interest in purchasing—pull up next to Gulliford's car. (Id. at 155-56). There were three people in the Camaro. The driver got out, opened Gulliford's passenger-side door, grabbed a purse, jumped back into the Camaro, and drove away. (Id. at 157). Cooper remained at the scene until police arrived. (Id. at 162).

Police broadcasted a BOLO (short for "be on the lookout") for a newer style Camaro. (Id. at 187-88). About ten minutes after the burglary, Collier County Sheriff's Office Deputy Daniel Darren spotted Howard driving a Camaro about four miles from the site of the crime and conducted a traffic stop. (Id. at 180-85). Police found Gulliford's sunglasses in the backseat. (Id. at 216). The purse and wallet were not recovered.

Within thirty minutes of the crime, police brought Cooper to the traffic stop, where he identified the Howard as the burglar; he also identified the man he saw in the passenger seat of the Camaro, but he was unable to identify the man in the back seat. (Id. at 164-66). On cross-examination, Cooper acknowledged that he probably could not have identified the Howard in a lineup. (Id. at 173).

After the parties rested, Howard moved for a judgment of acquittal. The trial court denied the motion. The jury found Howard guilty of burglary and theft of property worth $300 or more. (Id. at 325-26). At the sentencing hearing, the trial court found that Howard qualified as a violent career criminal and sentenced him to the 30-year mandatory minimum prison sentence. (Id. at 346, 351-53). Howard appealed, and the Second District Court of Appeal of Florida (2nd DCA) affirmed without a written opinion. (Id. at 477). Howard then filed a motion under Florida Rule of Civil Procedure 3.850, raising three grounds of ineffective assistance of counsel. (Id. at 482-504). The post-conviction court denied the motion without an evidentiary hearing. (Id. at 637-41). The 2nd DCA affirmed without a written opinion. (Id. at 707). Howard's federal habeas Petition is now ripe.

**II. Applicable Habeas Law**

    **a. AEDPA**

The Antiterrorism Effective Death Penalty Act (AEDPA) governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. White, 134 S. Ct. at 1702; Casey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

4

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." Sexton v. Beaudreaux, 138 S. Ct. 2555, 2558 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-

5

court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

**b. Exhaustion and Procedural Default**

AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of relief available under state law. Failure to exhaust occurs "when a petitioner has not 'fairly presented' every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Pope v. Sec'y for Dep't. of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).

Procedural defaults generally arise in two ways:

(1) where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred; or (2) where the petitioner never raised the claim in state court, and it is obvious that the state court would hold it to be procedurally barred if it were raised now.

Cortes v. Gladish, 216 F. App'x 897, 899 (11th Cir. 2007). A

federal habeas court may consider a procedurally barred claim if (1) petitioner shows "adequate cause and actual prejudice," or (2) if "the failure to consider the claim would result in a fundamental miscarriage of justice." Id. (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991)).

**c. Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person may have relief for ineffective assistance of counsel. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. Id.

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Sealey v. Warden, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting Strickland, 466 U.S. at 689). And "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Franks v. GDCP Warden, 975 F.3d 1165, 1176 (11th Cir. 2020) (quoting Harrington, 562 U.S. at 101). Thus, a habeas

petitioner must "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." Id.

The second prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Sealey, 954 F.3d at 1355 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

"An ineffective-assistance claim can be decided on either the deficiency or prejudice prong." Id. And "[w]hile the Strickland standard is itself hard to meet, 'establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.'" Id. (quoting Harrington, 562 U.S. at 105). The critical question is not whether this Court can see a substantial likelihood of a different result had defense counsel taken a different approach. Mays v. Hines, 141 S. Ct. 1145, 1149 (2021). All that matters is whether the state court, "notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." Id. (quoting Knowles v. Mirazayance, 556 U.S. 111, 123 (2009)).

**III. Analysis**

  **a. Ground 1: The State failed to prove every element of the offense.**

At trial, Gulliford testified she purchased the purse—a Prada designer handbag—for $2,400 a couple years before it was stolen. (Doc. #19-2 at 142). The purse contained a Prada wallet she purchased for $395 and sunglasses she purchased for $350. (Id. at 143-44). Howard argues this evidence was insufficient to prove the value of the stolen property, so the trial court's denial of his motion for acquittal—and the 2nd DCA's affirmance—violated his federal right to due process.

Howard argued on direct appeal that the evidence was insufficient to support a conviction under Florida law. (Id. at 412). But he did not argue the trial court violated his federal constitutional rights or cite any federal law. (Id. at 418-23). Because Howard did not apprise the state court of the federal nature of his claim, he failed to exhaust it. See Snowden, supra. And it is procedurally barred under Florida law. See Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179 (11th Cir. 2010) ("under Florida law, a claim is procedurally barred from being raised on collateral review if it could have been, but was not raised on direct appeal").

Even if Howard did exhaust this ground in state court, his

9

argument is frivolous. When evaluating a due process challenge to the sufficiency of evidence supporting a guilty verdict, the only question is "whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 566 U.S. 650, 656 (2012). Gulliford testified that she purchased three of the stolen items for $3,145 and that they were in good condition when stolen. The jury's finding that the value of the stolen property exceeded $300 was not irrational. The Court denies Ground 1.

    b. **Ground 2: Trial counsel failed to object to an intentionally racist jury selection process.**

Howard next claims Smith was constitutionally ineffective because he did not object to a jury selection process that systematically excluded African Americans. Howard does not explain how African Americans were excluded. He instead presents census data showing that 7.2% of Collier County's population identified as Black or African American in July 2015, about a year after Howard's trial.[1] (Doc. #2-1 at 5). Howard claims—and Respondent does not refute—the jury pool included zero African

---

[1] Howard claims 13.3% of Collier County's population was African American at the time of trial. But according to Howard's exhibits, the 13.3% figure represents the Black or African American population of the United States, not Collier County. (Doc. #2-1 at 7).

Americans.

The Sixth and Fourteenth Amendment entitle criminal defendants to a jury selected from a fair cross section of the community. Duren v. Missouri, 439 U.S. 357, 358-59 (1979). To establish a prima facie violation of this right, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Id. at 364.

The post-conviction court correctly applied federal law when it found that Howard failed to show an objection to the jury selection process would have had merit: "Defendant's claim is without merit because it failed to allege any facts establishing a systematic exclusion of non-white persons." (Doc. #9-1 at 638). A conclusory challenge to the racial composition of the jury venire is not enough to satisfy the third Duren element. Cull v. City of Orlando, Fla., 700 F. App'x 909, 913 (11th Cir. 2017) (rejecting a similar claim because the plaintiff failed "to identify anything about the jury selection process that could be considered not racially neutral or susceptible to abuse as a tool of

11

discrimination"). The Court denies Ground 2.

### c. Ground 3: Trial counsel misadvised Howard to reject a plea offer.

Before the trial date, the State made a plea offer of ten years with credit for time served. (Doc. #19-2 at 17). Howard did not accept the offer, despite his understanding that trial risked a minimum 30-year sentence. (Id. at 18). On the morning of trial, the State lowered its offer to 8 years. (Id. at 21). The trial court cautioned Howard that only two of its previous 40 felony jury cases ended with not-guilty verdicts. (Id. at 19-20). Smith responded, "Your Honor, I will say, as far as defense counsel goes, that is a statistic that would put my stomach in my throat." (Id. at 20). After discussing the 8-year offer with Smith, Howard rejected it. (Id. at 22-23).

Howard claims Smith convinced him to reject the plea offer by promising him that Cooper's testimony would be excluded and guaranteeing a not-guilty verdict. Howard only partially exhausted this ground. He did not allege in his Rule 3.850 motion that Smith promised he would suppress Cooper's identification testimony. (Id. at 490). Because Howard did not fairly present this alleged promise to the state court, he cannot rely on it here.

When a petitioner alleges ineffective advice led him to reject a plea offer, he must show four elements:

> that but for the ineffective advice of counsel there is
> a reasonable probability that the plea offer would have
> been presented to the court (*i.e.*, that [1] the defendant
> would have accepted the plea and [2] the prosecution
> would not have withdrawn it in light of the intervening
> circumstances), [3] that the court would have accepted
> its terms, and [4] that the conviction or sentence, or
> both, under the offer's terms would have been less severe
> than under the judgment and sentence that in fact were
> imposed.

Lafler v. Cooper, 566 U.S. 156, 164 (2012). In the post-conviction proceeding, the State conceded all but the first element—that Howard would have accepted the plea absent Smith's advice. The post-conviction court denied this ground without a hearing:

> As to the first element, the Defendant's claim is
> supported only by his affidavit dated February 2, 2017.
> The record reflects that the Defendant had ample
> opportunity to accept the plea on at least two different
> occasions before trial; that Defense counsel made a
> statement in response to the Court's advice concerning
> juries in Collier County that strongly rebuts
> Defendant's claim of misadvice; and that the Defendant
> was well informed of the potential consequences of
> rejecting the State's plea offer. The Court granted a
> recess, then a lengthy discussion took place between the
> Court, Defendant and his counsel. The Court conducted
> an additional colloquy relating to the plea offer.
> Thus, Defendant cannot demonstrate a claim of
> ineffective assistance since the record conclusively
> refutes the Defendant's allegations.

(Doc. #19-2 at 639 (internal citations omitted)).

The post-conviction court's rejection of this ground was not an unreasonable application of federal law. A "defendant's own conclusory after-the-fact assertion that he would have accepted a

guilty plea, without more, is insufficient to satisfy the first prong of the [Lafler] test." United States v. Smith, 983 F.3d 1213, 1222 (11th Cir. 2020). And even assuming Smith advised Howard to reject the plea offer because the State's case was weak—a claim the post-conviction court rejected based on its reasonable interpretation of the record—the guilty verdict did not render that advice constitutionally deficient. See Wiggins v. Sec'y, Fla. Dep't of Corr., 766 F. App'x 817, 823 (11th Cir. 2019) ("The fact that Petitioner ultimately lost at trial does not render counsel's assessment of the relative strengths of Petitioner's case unreasonable.").

Howard argues the post-conviction court erred by considering Smith's comment on the rate of guilty verdicts in the trial court—"that is a statistic that would put my stomach in my throat"—as evidence refuting Howard's claim. Howard offers an alternative interpretation: "Counsel's statement can easily be understood as both an attempt to form some camaraderie and bonding with the judge who was about to be presiding over this trial and as a literal statement that it was clearly not wise to roll the dice in that courtroom." (Doc. #25 at 9). But offering an alternative interpretation of the record is not enough to overcome the doubly deferential standard of review mandated by Strickland and §

2254(d). See Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020). The question is whether the post-conviction court "blunder[ed] so badly that every fairminded jurist would disagree[.]" Mays, supra. It did not. The Court denies Ground 3.

### d. Ground 4: Trial counsel failed to suppress testimony identifying Howard as the person who committed the burglary.

At trial, witness Sean Cooper described the burglar as a black male with a medium build in a light-colored outfit. (Doc. #19-2 at 157). Though the theft took less than ten seconds, Cooper was able to observe the face of the burglar and the man in the front passenger seat of the Camaro. (Id. at 160). Within a half-hour later, Cooper identified Howard and the front seat passenger at the site of the traffic stop, but he could not identify the rear passenger because his view had been obscured by the front passenger. (Id. at 162-67). Howard argues Smith should have moved to suppress Cooper's testimony because identifying him at the traffic stop and in handcuffs was suggestive and overly prejudicial.

The post-conviction court denied this ground because a motion to suppress would have lacked merit:

> In considering the admissibility of an out-of-court identification, the court should decide, "[f]irst

whether police used an unnecessarily suggestive procedure to obtain an out-of-court identification, and second, if so, considering the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." Green v. State, 641 So. 2d 391, 394 (Fla. 1994), citing Grant v. State, 390 So. 2d 341, 343 (Fla. 1980). Show-up identifications have long been held permissible in Florida courts, as long as the totality of the circumstances does not give rise to a substantial likelihood of misidentification, 'including the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witnesses' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." State v. Hernandez, 841 So. 2d 469 (Fla. 3rd DCA 2002), citing Neil v. Biggers, 409 U.S. 188 (1972).

In this case, the record reflects that the State's eyewitness, Sean Cooper, had an opportunity to see the Defendant. He testified that when the Defendant sped off, he was so close to the vehicle that "they actually had to go around [his] vehicle." Furthermore, the eyewitness was paying close attention to the vehicle because he was interested in purchasing a similar model of the car for himself. Not only did the eyewitness give an accurate description of the vehicle that helped law enforcement locate the vehicle within 10 minutes of the crime, but he also provided a description of the vehicle's occupants that matched the identities of the Defendant and passenger. Finally, at a show-up identification conducted less than 30 minutes after the crime, the witness was able to identify the Defendant and passenger without hesitation.

The record demonstrates that the totality of the circumstances test outlined in Hernandez, supra, has not been met. The testimony demonstrates that Defendant cannot show a meritorious claim for suppression of the evidence of his identity. Counsel cannot be deemed ineffective for failing to object or raise meritless claims. Teffeteller v. Dugger, 734 So. 2d 1009 (Fla.

1999).

(Doc. #19-2 at 639-41 (citations to exhibits omitted)). The post-conviction court reasonably applied the proper legal standard to evaluate out-of-court identifications. See Neil v. Biggers, 409 U.S. 188, 199-200 (1972). And its factual findings are supported by the record. Each Neil element, when applied to the facts in the record, supports admission of Cooper's identification testimony. A motion to suppress would have been meritless. The Court denies Ground 4.

### IV. Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36

(2003) (citations omitted). Howard has not made the requisite showing here and may not have a certificate of appealability on any ground of his Petition.

Accordingly, it is

**ORDERED:**

Petitioner Sadle D. Howard, Jr.'s Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to terminate all pending motions and deadlines, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on June __8th__, 2021.

*/s/ John E. Steele*
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record